employed by the master or owners of the tow as the mere motive power to propel their vessel from one point to another, and both vessels are exclusively under the control, direction and management of the master and crew of the tow. * * * But whenever the tug, under the charge of her own master and crew, and in the usual and ordinary course of such an employment, undertakes to transport another vessel, which, for the time being, has neither her master nor crew on board, from one point to another, over waters where such accessory power is necessarily or usually employed, she must be held responsible for the proper navigation of both vessels. * * * Assuming that the tug is a suitable vessel, properly manned and equipped for the undertaking, so that no degree of negligence can attach to the owners of the tow, on the ground that the motive power employed by them was in an unseaworthy condition, and the tow, under the circumstances supposed, is no more responsible for the consequences of a collision than so much freight; and it is not perceived that it can make any difference in that behalf, that a part, or even the whole officers and crew of the tow are on board, provided it clearly appears that the tug was a seaworthy vessel, properly manned and equipped for the enterprise," etc.

To apply these doctrines to the present case: In the first place, those in charge of the respective vessels jointly participated in their control and management, or, in other words, each vessel was in the immediate charge and control of her own officers and crew, and so, under the law as above laid down, this comes within the class of cases in which both the tow and the tug may be jointly liable. In the second place, the tug, as we have seen, was not properly manned for the enterprise, and so this case comes also within the class of cases in which the tow may be held in fault for employing a motive power which was in an unseaworthy condition. That the tow should be held in fault, especially in view of the great doubt and uncertainty before mentioned concerning her condition and her conduct, I think scarcely admits of doubt. It results that both the tow and tug must be held jointly liable for the consequences of the collision, unless the answers to the above positions set up on the argument, which will now be considered, are sufficient to defeat a recovery.

The first objection to a recovery on the ground stated, viz: that the tug was not properly manned, is that there is no such specific fault charged or set up in the libel or other pleadings. It is true, the libel contains no specific allegations of fault against either vessel, the charge in that respect being in the most general terms imaginable, that the collision was caused "through the negligent and insufficient management of

said tug, and schooner Foster." There are, however, two complete answers to the objection on this ground. Firstly, no exceptions having been taken to the libel, and the case having evidently been fully and fairly presented, so far as the matter in question is concerned, the court would direct the libel to be amended, if necessary to sustain a decree in favor of libellant. Secondly, in the case of The Syracuse, 12 Wall. [79 U. S.] 167, 173, the supreme court, in deciding an objection precisely like this one, and where it was expressly held that the libel was defective for want of such specific allegation, laid down the following rule: "But in admiralty, an omission to state some facts which prove to be material, but which cannot have occasioned any surprise to the opposite party, will not be allowed to work any injury to the libellant, if the court can see there was no design on his part in omitting to state them. The Quickstep, 9 Wall. [76 U. S.] 670; The Clement [Case No. 2,-879]. There is no doctrine of mere technical variance in the admiralty, and subject to the rule above stated, it is the duty of the court to extract the real case from the whole record, and decide accordingly." As in that case, so in this, it is very clear that the libellant had no design in view in omitting to charge specifically as a fault, that the tug was not properly manned; and it is equally clear that the proof on that subject, coming, as it did, from the opposite parties, could not have operated to confuse them.

The remaining objection to a recovery is that, as appears by the proofs, the tug was fully manned according to the custom in this respect of tugs plying on those waters. The rule requiring that tugs, while in active service, should have a wheelsman separate from the officer in charge of her navigation, and that such officer have no other duties to perform, is a salutary one for the protection of life and property and inseparable from the very nature of the service, and no reckless and unsanctioned usage to the contrary can be allowed to do it away or modify it. If such a custom, as is contended, prevails at the mouth of Saginaw river, the sooner it is abandoned the better for the interests of commerce, as well as of tug owners themselves.

Decree for libellant.

## Case No 2,981a.
### COLEMAN v. BAILEY.
[See Case No. 8,604.]

COLEMAN (BARTLE v.). See Case No. 1,-072.

COLEMAN (CLIFFORD v.). See Case No. 2,894.

COLEMAN (FURLONG v.). See Case No. 5,161.